# In the United States Court of Federal Claims

BID PROTEST

| | |
|---|---|
| UNITED DEFENSE, LLC,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant,<br><br>v.<br><br>EVOCATI SOLUTIONS JV, LLC,<br><br>Defendant-Intervenor. | No. 25-2108<br>(Filed Under Seal: March 2, 2026<br>Reissued:  March 18, 2026)* |

Shomari Brock Wade, Michael J. Gardner, Christopher M. O'Brien, Jordan N. Malone, and Olivia C. Bellini, Greenberg Traurig, LLP, Washington, DC, for Plaintiff.

Borislav Kushnir, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, with whom were Douglas K. Mickle, Acting Deputy Director, Patricia M. McCarthy, Director, and Brett A. Shumate, Assistant Attorney General. Carter Cassidy, Trial Attorney, U.S. Army Legal Services Agency, Washington, DC, Of Counsel.

W. Brad English, Emily J. Chancey, Taylor R. Holt, and Hunter M. Drake, Maynard Nexsen PC, Huntsville, AL, for Defendant-Intervenor.

## <u>OPINION AND ORDER</u>

**KAPLAN, Judge.**

---

\* This Opinion was originally issued under seal on March 2, 2026. The parties filed a Joint Notice proposing redaction of, among other items, the adjectival ratings assigned to United Defense's proposal. The Notice contains no justification for redacting the ratings. Nor is any justification apparent to the Court because the ratings do not constitute source selection information, proprietary information, or confidential information. Protective Order, Dkt. 19 ¶ 1. For those reasons, and in light of the well-established presumption in favor of public access to court records and proceedings, Nixon v. Warner Commc'ns, 435 U.S. 589, 597–98 (1978); In re Violation of Rule 28(d), 635 F.3d 1352, 1359–60 (Fed. Cir. 2011), the Court declines to redact the ratings from its Opinion. It will adopt one of the parties' proposed redactions, which is indicated by [***].

In this pre-award bid protest, Plaintiff United Defense, LLC ("United Defense") challenges the decision of the Army Mission Installation Contracting Command ("Army Command") to award a follow-on contract for the performance of intelligence services to Defendant-Intervenor, Evocati Solutions JV, LLC ("Evocati"). United Defense requests that the Court enjoin the award to Evocati based on alleged violations of the Procurement Integrity Act ("PIA"), 41 U.S.C. § 2102, committed by one of Evocati's joint venture members—Yorktown Systems Group, Inc. ("Yorktown").

Specifically, United Defense alleges Yorktown violated the PIA when it improperly obtained proprietary and financial information belonging to Threat Tec, LLC ("Threat Tec"), one of United Defense's joint venture members. Compl. ¶¶ 21–24, 26–27, 34–37, Dkt. No. 1. United Defense further asserts that Army Command's failure to investigate this alleged PIA violation was arbitrary and capricious, contrary to law, and "competitively prejudiced" United Defense. Id.

For the reasons set forth below, the Court concludes United Defense lacks Article III standing to pursue these claims because it was ineligible for the contract award for reasons entirely unrelated to any alleged violation of the PIA. Accordingly, the Complaint is **DISMISSED** for lack of Article III standing under 12(h)(3). All remaining motions are **DENIED** as moot.

## BACKGROUND

### I.    The Threat Tec-Yorktown Dispute

As noted above, this bid protest has its origins in a dispute between two private actors who are not named parties in this case, Threat Tec and Yorktown. The two entities were previously members of Threat Tec-Yorktown JV, a joint venture under the Small Business Administration's ("SBA's") Mentor-Protégé Program, which was formed for the purposes of performing Contract No. W911S020C0007—the predecessor to the contract whose award is the subject of this protest. See AR Tab 7b at 633–34.

The relationship between Threat Tec and Yorktown has since soured. See, e.g., Yorktown Sys. Grp. Inc. v. Threat Tec LLC, 108 F.4th 1287 (11th Cir. 2024) (describing the deterioration of the relationship between Yorktown and Threat Tec and upholding the district court's preliminary injunction ordering Threat Tec "to refrain from using its position as managing member of the JV to push Yorktown out of its share of the work on the TRADOC contract"). Apparently as a result of this corporate breakup—and as relevant to the present action—Threat Tec is now a member of United Defense. AR Tab 11a at 1137. And Yorktown is now a member of Evocati. AR Tab 10a at 930.

According to United Defense, on December 9, 2024, Threat Tec learned that Yorktown personnel exploited a vulnerability in Threat Tec's SharePoint system to access the latter's salary and financial information, as well as proprietary government data and contract information related to the Threat Tec-Yorktown JV award. AR Tab 7b at 633–34. On December 18, 2024, Threat Tec filed a security incident report regarding the alleged breach with the Defense Counterintelligence and Security Agency. Id. at 634. Since then, Threat Tec and Yorktown have been in litigation in the United States District Court for the Northern District of Alabama. Id.; Yorktown Sys. Grp., Inc. v. Threat Tec, LLC, No. 5:22-CV-0496-LCB (N.D. Ala).

On January 8, 2025—just a few days after Army Command issued the Solicitation for the procurement at issue in this case—Threat Tec notified Army Command's contracting officer that its IT system had been "compromised" by Yorktown personnel. AR Tab 7a at 631. Threat Tec alleged

that the improper access had resulted in "unauthorized disclosure of Controlled Unclassified Information (CUI), Threat Tec confidential and proprietary business information, and Threat Tec employee Personal Identifiable Information (PII)." Id. Threat Tec attached a Cyber Incident Report it had prepared, as well as excerpts from the deposition of Babeyele Sodade, Yorktown's Director of Finance and Accounting, in which he allegedly "[***]" Id. at 631–32; see also AR Tab 8a (Deposition Transcript).

Threat Tec did not request that Army Command take any action based on its letter, and it did not claim that Yorktown's conduct violated the PIA. See AR Tab 7a. The contracting officer, for his part, confirmed Army Command "received the documents" and promised to let Threat Tec know if it had any questions. AR Tab 9 at 927.

## II.    The Solicitation

On January 3, 2025, Army Command issued Solicitation No. W911S025RA001 (the "Solicitation") as a small business set aside, seeking proposals to perform a follow-on contract to the one between Army Command and incumbent contractor Threat Tec-Yorktown JV. AR Tab 1 at 1, 83. The Solicitation advised that the award would be made on a best value basis with consideration given to three factors: Technical Approach (Factor 1), Past Performance (Factor 2), and Price (Factor 3). AR Tab 5 at 623. Technical Approach would be "significantly more important" than Past Performance. Id. Technical Approach and Past Performance, when combined, were significantly more important than Price. Id.

Only the Technical Approach factor is relevant to the disposition of this protest. Under that factor, Army Command would assess "the Offeror's understanding, methodology and capability to satisfy the Government's requirements." Id. To assess Technical Approach, Army Command would evaluate an offeror's management and staffing approach, its use of decision support tools, and its ability to understand and execute on three specific functional areas. Id. at 623–24.

Offerors would receive a rating of either "Outstanding," "Good," "Acceptable," "Marginal," or "Unacceptable" for Technical Approach. Id. at 624. A proposal would receive a "Marginal" rating under Technical Approach where it did not demonstrate "an adequate approach and understanding of the requirements" and/or where the risk of unsuccessful performance was "high." Id. An "Unacceptable" rating would be assigned for Technical Approach where the proposal did not meet the requirements of the Solicitation, contained "one or more deficiencies" which made it unawardable, and/or had an unacceptably high performance risk. Id.

The Solicitation defined a "deficiency" as a "material failure of a proposal to meet a Government requirement or a combination of significant weaknesses in a proposal that increase[d] the risk of unsuccessful contract performance to an unacceptable level." Id. at 625 (citing FAR 15.001). A "significant weakness" was a "flaw in the proposal that appreciably increase[d] the risk of unsuccessful contract performance." Id. (citing FAR 15.001). Significantly, for purposes of this case, an offeror that received either a "Marginal" or "Unacceptable" rating under Technical Approach would be found ineligible for award. Id. at 623.

## III.   The Evaluation of United Defense's Technical Approach

Army Command received nine proposals in response to the Solicitation, including submissions from Evocati and United Defense. AR Tab 16 at 1433; see also AR Tab 10 (Evocati's Proposal); AR Tab 11 (United Defense's Proposal). Under Technical Approach, the Technical

Evaluation Board ("TEB") awarded Evocati's proposal eight significant strengths, seventeen strengths, and three weaknesses, earning Evocati an "Outstanding" rating. See AR Tab 12 at 1359, 1381, 1401, 1411. In contrast, the TEB awarded United Defense's Technical Approach proposal two significant strengths, thirteen strengths, seventeen weaknesses, six significant weaknesses, and three deficiencies. See id. at 1362, 1391, 1408. As a result, United Defense received an "Unacceptable" rating for its Technical Approach, which made it ineligible for the award. Id. at 1359; AR Tab 13 at 1415; AR Tab 16 at 1435–36. Three other offerors received higher Technical Approach ratings, including one offeror that received an "Outstanding" rating. AR Tab 12 at 1359.

The Source Selection Evaluation Board ("SSEB") explained that United Defense's Technical Approach was rated "Unacceptable" because it did not meet the Solicitation's requirements and contained more than one deficiency. AR Tab 16 at 1439. The SSEB found United Defense's risk of unsuccessful performance "unacceptably high" because it had failed "to identify risks that are aligned to the requirement," finding it was "unlikely" that "special contractor emphasis and close Government monitoring" would "be able to overcome any difficulties." Id. at 1440; see also AR Tab 12 at 1362 (Technical Evaluation Board Report).

The Source Selection Advisory Committee ("SSAC") reviewed the evaluations and proposals and determined that "all final proposal evaluations were performed and documented in accordance with the solicitation's evaluation criteria and rating definitions," and it "did not identify any technical evaluation inconsistencies." AR Tab 13 at 1414. The SSAC found Evocati's proposal represented the best value to the government. Id. at 1415; AR Tab 16 at 1433, 1547.

The Source Selection Authority ("SSA") concurred with the underlying evaluations and "adopt[ed] them as [his] own." AR Tab 16 at 1435. The SSA also agreed with the SSAC's recommendation to award the contract to Evocati. Id. at 1547.

## IV.   GAO Protest

On August 27, 2025, Army Command informed United Defense that it intended to award the contract to Evocati. AR Tab 17 at 1548. United Defense then filed an unsuccessful protest with SBA, see AR Tab 18 at 1550–51, followed by an unsuccessful protest with the Government Accountability Office ("GAO"), see AR Tab 19. In its GAO protest, United Defense alleged Yorktown violated the PIA by wrongfully obtaining Threat Tec's proprietary and financial information. AR Tab 20 at 1829. It also alleged violations of the Economic Espionage Act. Id. at 1829 n.2.

On December 9, 2025, GAO dismissed United Defense's protest, finding the protest was not timely filed, GAO lacked jurisdiction over claims brought under the Espionage Act, and United Defense's PIA claim lacked a legally sufficient basis because it did not contain credible allegations of misconduct by the government. Id. at 1829–31. Instead, GAO concluded, United Defense's allegations "involve a private dispute between private parties that is not for our consideration as part of our bid protest function." Id. at 1831.

## V.   This Action

On December 12, 2025, three days after GAO dismissed its protest, United Defense filed the present action in this Court. Compl. In its Complaint, United Defense alleges Army Command violated FAR 3.104-7(a) when it failed to investigate Threat Tec's claims that (1) Yorktown violated the PIA and (2) its unlawful access to United Defense's proprietary information gave

4

Evocati an unfair advantage against United Defense. Compl. ¶¶ 26–27, 36–37.[1] United Defense seeks injunctive relief prohibiting Army Command from awarding the contract to Evocati until it conducts an investigation of Threat Tec's allegations that Yorktown violated the PIA, a remand for that purpose, and reasonable attorneys' fees and costs. Compl. at 8–9.

Plaintiff filed a Motion for Judgment on the Administrative Record on January 13, 2026. Pl.'s Motion for Judgment on the Administrative Record [hereinafter Pl.'s MJAR], Dkt. No. 25. On January 27, 2026, the government filed a Cross-Motion for Judgment on the Administrative Record and a Response to Plaintiff's Motion for Judgment on the Administrative Record. Def.'s Cross-Motion for Judgment on the Administrative Record, Dkt. No. 26. On the same day, Evocati filed its own Cross-Motion for Judgment on the Administrative Record and Response, as well as a Motion to Dismiss pursuant to RCFC 12(b)(1) and 12(b)(6). Def.-Intervenor's Motion to Dismiss Pursuant to 12(b)(1) & 12(b)(6) & Cross-Motion for Judgment on the Administrative Record, Dkt. No. 27. United Defense filed its Reply in support of its Motion on February 3, 2026. Pl.'s Reply, Dkt. No. 31. On February 10, 2026, the government filed its Reply in support of its Motion, Dkt. No. 34, and Evocati filed its Reply in support of its Motion, Dkt. No. 32. The Court has determined that oral argument is unnecessary in this case.

## DISCUSSION

Both the government and Evocati argue United Defense does not have Tucker Act standing to press its claims. They both seek judgment on the administrative record on that basis. Additionally, Evocati requests that the case be dismissed under RCFC 12(b)(1) for lack of subject-matter jurisdiction and/or 12(b)(6) for failure to state a claim. Neither party, however, addresses whether United Defense has Article III standing.

For the reasons set forth below, the Court concludes that the facts alleged by United Defense, and those in the Administrative Record which are integral to or incorporated into the Complaint, are not sufficient to establish Article III standing. Moreover, even leaving this fatal defect aside, United Defense lacks statutory standing under the Tucker Act. Accordingly, the Court dismisses United Defense's Complaint under RCFC 12(h)(3) based on Article III standing. All remaining motions are denied as moot.

## I.    Article III Standing

"The Court of Federal Claims, though an Article I court, . . . applies the same standing requirements enforced by other federal courts created under Article III." Associated Energy Grp., LLC v. United States, 131 F.4th 1312, 1317 (Fed. Cir. 2025) (alteration in original) (quoting Wks Marine, Inc. v. United States, 575 F.3d 1352, 1359 (Fed. Cir. 2009)). Those requirements dictate that a plaintiff must show they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016) (first citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992); and then citing Friends of the Earth, Inc. v. Laidlaw Env't Servs.

---

[1] United Defense also alleged violations of the Economic Espionage Act in its Complaint. See Compl. ¶¶ 29–33. In its Motion for Judgment on the Administrative Record, however, United Defense withdrew the claim. Pl.'s MJAR at 8 n.3

(TOC), Inc., 528 U.S. 167, 180–81 (2000)). The plaintiff bears the burden of establishing these elements. Id. (citing FW/PBS, Inc. v. Dallas, 493 U.S. 215, 231 (1990)).

In this case, United Defense alleges that Army Command's failure to investigate Yorktown's improper access to Threat Tec's proprietary information gave Evocati an unfair competitive advantage in the procurement. It further contends that had the Army conducted an investigation, Evocati would have been disqualified from the procurement and United Defense would have had a substantial chance to receive the award.

However, United Defense was found ineligible for the contract award because its Technical Approach proposal received an "Unacceptable" rating. See AR Tab 16 at 1435–36; AR Tab 5 at 623. Notably, United Defense does not challenge this rating in its Complaint or its subsequent briefs before this Court. See, e.g., Compl; Pl.'s MJAR; see also Associated Energy Grp., 131 F.4th at 1318–19 (explaining that an unsuccessful protestor's failure to challenge its ineligibility for an award meant it failed to establish Article III standing). And it does not in any way connect the rating it was assigned to any advantage Evocati allegedly enjoyed as a result of its purported improper access to competitively useful information.

In short, even if Evocati were excluded from the competition, United Defense could not have received what it ultimately seeks here, namely, the contract award. It has neither sufficiently alleged nor established that it suffered a concrete injury that is both traceable to the government conduct it challenges and redressable by the Court. It therefore lacks Article III standing, and its Complaint must be dismissed on that basis. Cf. Thole v. U.S. Bank N.A., 590 U.S. 538, 541–42 (2020) (finding plaintiffs lacked Article III standing when their position would not change regardless of the case's outcome); Associated Energy Grp., 131 F.4th at 1318–1319 (holding plaintiff lacked Article III standing when it was otherwise ineligible for contract award).

## II.    Statutory Standing Under the Tucker Act

Even assuming that United Defense could establish Article III standing, the Court agrees with the government and Evocati that United Defense lacks statutory standing to pursue its Complaint. As such, and in the alternative, the Court concludes that the Complaint is subject to dismissal under RCFC 12(b)(6).

To survive a motion to dismiss under RCFC 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In deciding the motion, "the court must accept as true the complaint's undisputed factual allegations and should construe them in a light most favorable to the plaintiff." Cambridge v. United States, 558 F.3d 1331, 1335 (Fed. Cir. 2009) (first citing Papasan v. Allain, 478 U.S. 265, 283 (1986); and then citing Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991)). Further, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues

& Rights, Ltd., 551 U.S. 308, 322 (2007) (citing 5B Wright & Miller § 1357 (3d ed. 2004 and Supp. 2007)).[2]

The Tucker Act provides the Court of Federal Claims jurisdiction to render judgment in actions "by an interested party objecting to . . . a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). An "interested party" is "an actual or prospective bidder or offeror whose direct economic interest would be affected by the award or by failure to award the contract." Percipient.AI, Inc. v. United States, 153 F.4th 1226, 1233 (Fed. Cir. 2025) (en banc). To meet the direct economic interest test, a plaintiff must show it had "a substantial chance of winning the contract." CliniComp Int'l, Inc. v. United States, 904 F.3d 1353, 1358 (Fed. Cir. 2018) (quoting Diaz v. United States, 853 F.3d 1355, 1358 (Fed. Cir. 2017)).[3]

Assuming this showing is made, a plaintiff must then demonstrate "it was prejudiced by a significant error in the procurement process." Id. at 1358 (citing Diaz, 853 F.3d at 1358). To do this, it must show "it had greater than an insubstantial chance of securing the contract if successful on the merits of the bid protest." Rev, LLC v. United States, Aptive Res., LLC, 91 F.4th 1156, 1163 (Fed. Cir. 2024) (quoting Info. Tech. & Applications Corp. v. United States, 316 F.3d 1312, 1319 (Fed. Cir. 2003)). Put another way, a plaintiff must "show that but for the error, it would have had a substantial chance of securing the contract." CliniComp, 904 F.3d at 1358 (alteration in original) (quoting Labatt Food Serv., Inc. v. United States, 577 F.3d 1375, 1378 (Fed. Cir. 2009)).

As the Federal Circuit has observed, although the interested party and the prejudice inquiries "may be similar, prejudice must be shown either as part of, or in addition to, showing a direct economic interest." CliniComp, 904 F.3d at 1358 (citing Labatt Food Serv. Inc. v. United States, 577 F.3d 1375, 1379–80 (Fed. Cir. 2009)). Thus, "the same showing may be pertinent to (and may even satisfy) both" inquiries. Rev, LLC, 91 F.4th at 1163–64.

In this case, the facts as alleged by United Defense are insufficient to state a facially plausible claim that it is an interested party or that it was prejudiced by an error in the procurement process. Therefore, United Defense lacks statutory standing to pursue its claims.

First, the facts as alleged in United Defense's Complaint do not show the Agency's decision to award the contract to Evocati affected United Defense's direct economic interest. Specifically, as explained above, United Defense has not established that its proposal had a substantial chance of winning the contract award. A plaintiff who submits a proposal that is ineligible for an award lacks the direct economic interest needed to establish that it is an interested party. See Associated Energy Grp., 131 F.4th at 1320 (holding protester lacked both Article III and statutory standing to challenge award of bridge contract where it was ineligible to perform the contract because it did not possess a

---

[2] United Defense appended several documents included in the Administrative Record to its Complaint, including its January 8, 2025 letter to Army Command, the Solicitation, and the GAO Decision. See Compl., Dkt. 1-1 at 1.

[3] Although this protest was filed in the pre-award stage, the "substantial chance" standard is applicable because United Defense is not challenging the solicitation itself but rather the application of the solicitation to its proposal. Orion Tech., Inc. v. United States, 704 F.3d 1344, 1348–49 (Fed. Cir. 2013).

license required by the solicitation); <u>Asset Prot. & Servs., L.P. v. United States</u>, 5 F.4th 1361, 1365 (Fed. Cir. 2021) (upholding dismissal of complaint based on lack of standing where "[the protester] did not have a substantial chance of winning the contract because its proposal was not responsive to the solicitation, making it ineligible for the contract award"); <u>Indep. Rough Terrain Ctr., LLC v. United States</u>, 172 Fed. Cl. 250, 260 (2024) (finding a protester lacked statutory standing when a lapse in its SAM registration made it ineligible for award).

Second, United Defense has not shown it was prejudiced by a significant error in the procurement process. United Defense complains that Army Command erred by failing to investigate an alleged violation of the PIA by Yorktown. But even if Army Command had conducted such an investigation and identified a PIA violation, United Defense would still not have had a substantial (or even any) chance of being awarded the contract because its Technical Approach proposal was found "Unacceptable." United Defense does not challenge its "Unacceptable" rating in this litigation, and it has not articulated facts that link this rating to Yorktown's alleged PIA violation.

At best, United Defense vaguely asserts in its Motion for Judgment on the Administrative Record that by not conducting an investigation, Army Command "perpetuated an uneven playing field and deprived United Defense (and other offerors) of the opportunity to compete fairly." Pl.'s MJAR at 15. It further alleges for the first time in its Reply brief that Army Command's failure to investigate somehow raises concerns about the lawfulness of its evaluation of the Technical Approach proposals so that "the appropriate resolution in this case would be the reevaluation of proposals." Pl.'s Reply at 2, 4–6.

These arguments fail. Even accepting United Defense's tenuous claim that an investigation into the alleged PIA violation would have led to Evocati being found ineligible for award, that would not have affected United Defense's chances in the competition, much less made it an interested party under the Tucker Act. As described above in connection with Article III standing, United Defense's "Unacceptable" rating rendered it ineligible for award independent of whether Evocati should have been excluded from the procurement. And United Defense fails to explain how any failure to investigate a PIA violation logically might reflect a defect in the evaluation of its Technical Approach proposal justifying a reevaluation of that proposal. Indeed, as noted above, United Defense does not identify any such defect.

## CONCLUSION

For the reasons stated above, the Complaint is **DISMISSED** for lack of Article III standing under RCFC 12(h)(3). The following motions are **DENIED-as-moot**: United Defense's Motion for Judgment on the Administrative Record, Dkt. No. 25; the government's and Evocati's Cross-Motions for Judgment on the Administrative Record, Dkt. No. 26 & 27; and Evocati's Motion to Dismiss, Dkt. No. 27. The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

s/ Elaine D. Kaplan
ELAINE D. KAPLAN
Judge

8